IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY TIHANSKY, : | |
| : | |
| **Plaintiff,** : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 17-5392 |
| EDIZONE, LLC, : | |
| : | |
| **Defendant.** : | |

MEMORANDUM

**TUCKER, J.**                                                                                July 10th, 2019

      Presently before the Court is Defendant Edizone, LLC's Motion for Summary Judgment ("Motion") (ECF No. 10), Plaintiff's Reply in Opposition (ECF No. 14), Defendant's Sur-Reply (ECF No. 17), Defendant's Memorandum in Support (ECF No. 19), and Pl.'s Sur-Reply (ECF No. 22). Upon careful consideration of the Parties' submissions and exhibits, and for the reasons set forth below, Defendant's Motion is DENIED.

**I.    STATEMENT OF FACTS**

      Plaintiff Jeffery Tihansky ("Plaintiff") suffers from multiple sclerosis and neuromyelitis optica. Compl. ¶¶ 9–10, ECF No. 1. As a result of Plainitff's condition, he suffers decreased sensation.[1] Compl. ¶ 10. Plaintiff purchased the Roll-N-Go Seat ("Wondergel Cushion" or "Cushion") on January 8, 2016. Compl. ¶ 11, ECF No. 1. The Wondergel Cushion "provides immediate, continuous cushioning with . . . support, and variability;" it "is easy to roll up and take with you on the go." Ex. A, ECF No. 22; Compl. ¶ 6, ECF No. 1. On June 25, 2016, Plaintiff placed the Wondergel Cushion onto his motor scooter, then transferred the scooter to his

---

[1] Plaintiff did not specify where and to the degree in which he suffers from decreased sensation.

1

van. Compl. ¶ 16. The scooter, and Wondergel Cushion stayed in the van. Compl. ¶¶ 17–19. Plaintiff later returned to his van and transferred back onto the scooter. Compl. ¶ 17. It is unclear how long the Cushion was in the van, and how long Plaintiff sat on the Cushion. However, "as a result of the prolonged exposure to the [Wondergel Cushion], [P]laintiff suffered serious and permanent injuries." Compl. ¶ 19. Due to his medical conditions, Plaintiff did not feel the temperature of the Wondergel Cushion as he was utilizing his scooter; consequently, Plaintiff suffered second degree burns on his buttocks. Compl. ¶¶ 9–10, 25.

On December 1, 2017, Plaintiff filed this product liability claim against Defendant Edizone, LLC ("Defendant") alleging strict liability, breach of the implied warranties of merchantability and fitness for a particular purpose, and negligence. Compl. ¶¶ 31–49. Defendant filed its Motion for Summary Judgment on August 24, 2018. Def.'s Summ. J. Mem., ECF No. 10. Defendant argues that "Purple Innovation, LLC, formerly known as Wondergel, LLC developed, manufactured and/or marketed the [Wondergel Cushion]." Def.'s Summ. J. Mem. 2. Defendant seeks summary judgment in its favor arguing that it did not develop, manufacture and market the Wondergel Cushion. Def.'s Summ. J. Mem. 3. Furthermore, Defendant argues, Plaintiff's claims should be dismissed given Plaintiff's spoliation of evidence. Def.'s Summ. J. Mem. 7.

II.   STANDARD OF REVIEW

Upon consideration of the pleadings, depositions, and admissions on file, summary judgment is proper when the movant shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is genuine only if a reasonable jury,

considering the evidence presented, could find for the non-moving party." *Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1043 (3d Cir. 1997) (internal quotation marks omitted). If the moving party meets its burden and shows there is no genuine issue of material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The court must review the evidence presented in the light most favorable to the nonmoving party. *Reliance Ins. Co. v. Moessner*, 121 F. 3d 895, 900 (3d Cir. 1997).

## III. DISCUSSION

Defendant seeks summary judgment on Plaintiff's claims for strict liability, breach of the implied warranties of merchantability and fitness for a particular purpose, and negligence. Def.'s Summ. J. Mem. 3, ECF No. 10. Defendant argues that it did not develop, manufacture or sell the Wondergel, thus it cannot be liable for Plaintiff's injuries. Def.'s Summ. J. Mem. 4–6. Furthermore, Defendant argues that this matter should be dismissed with prejudice "given Plaintiff's spoliation of the evidence." Def.'s Summ. J. Mem. 7. For the reasons that follow, Defendant's Motion is DENIED.

### A. Plaintiff's Strict Product Liability Claim

Strict liability is premised on the theory that "those who sell a product (*i.e.*, profit from making and putting a product in the stream of commerce) are held responsible for damage caused to a consumer by the reasonable use of the product." *Tincher v. Omega Flex Inc.*, 104 A.3d 328, 385 (Pa. 2014). In product liability cases that are premised on strict liability, Pennsylvania follows § 402A of the Second Restatement of Torts. *Id.* at 357. Under § 402A, a plaintiff may recover damages "where a product in a defective condition[,] unreasonably

3

dangerous to [a] user or consumer," causes him harm. *Phillips v. A-Best Prods., Co.*, 665 A.2d 1167, 1170 (Pa. 1995) (internal citations omitted). To prevail on a strict liability claim under § 402A, a plaintiff must show that: 1) the product was defective; 2) the defect proximately caused plaintiff's injury; and 3) the defect existed at the time the product left defendant's control. *Tincher*, 104 A.3d at 357. Three types of defective conditions can give rise to a product liability claim: 1) failure to warn, 2) design defects, and 3) manufacturing defects. *A-Best Prods.*, 665 A.2d at 1170. Plaintiff argues each of the above claims; the Court will first analyze the failure to warn claim and conclude with a joint analysis for the design and manufacturing defects claims.

      **i.    Failure to Warn**

A plaintiff bringing a failure to warn claim is arguing that the "product was distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." *Id.* at 1171 (internal citations omitted). The plaintiff must show "that the product was sold in a defective condition unreasonably dangerous to [a consumer], and [] the defect caused plaintiff's injury." *Id.* (internal citations omitted). In this context, a product is defective if the warning it *does* entail is inadequate, or if it is lacking a warning altogether. *Id*. A defect is the cause of plaintiff's injury if plaintiff would have avoided the product had the seller warned of the danger. *Id*.

      **ii.    Design and Manufacturing Defects**

A product contains design and manufacturing defects if the product is unsafe for the intended use. *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1007 (Pa. 2003); *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 531 (Pa. Super. Ct. 2009) ("A product is in a 'defective condition' when it lacks 'any element necessary to make it safe for its intended use or possessing any element that renders it unsafe for the intended use.'" (quoting *Azzarello v. Black Bros. Co., Inc.*, 391 A.2d 1020, 1021 (Pa. 1978)) "[C]ounsel must articulate [] plaintiff's strict liability claim by

4

alleging sufficient facts to make a *prima facie* case premised [on] either a "consumer expectations" or "risk-utility" theory, or both." *Tincher*, 104 A.3d at 406 (emphasis in original). A plaintiff's decision to pursue one or both theories rests upon the nature of the product, the standard of proof for each theory, the possibility of confusing the issues for the jury, or the evidence available for trial. *Id.*

Under the consumer expectations test, a "product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer." *Id.* at 384. In determining a reasonable customer's expectations, courts may consider "[t]he nature of the product, the identity of the user, the product's intended use and intended user, and any express or implied representations by a manufacturer or [] seller." *Id.*

Under the risk utility test, a "product is in a defective condition if a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions." *Id.* at 389 (internal quotation marks omitted).

### iii. Defendant Marketing, Developing and/or Selling the Wondergel Cushion is a Genuine Issue for Trial

There are sufficient facts in the record that create a triable issue of fact regarding Plaintiff's strict liability claims for failure to warn, and design and manufacturing defects. Defendant argues that there is no evidence that the Wondergel Cushion was ever in its control given that it did not develop, manufacture and market the Wondergel. Def.'s Summ. J. Mem. 6, ECF No. 10. Thus, it cannot be strictly liable for Plaintiff's injuries. Def.'s Summ. J. Mem. 6.

In support of his opposition to summary judgment, Plaintiff attached Form 8-K/A which Defendant filed with the Securities and Exchange Commission. Pl.'s Answer to Summ. J. Mot. 2, Ex. A, ECF No. 14. The form states that Defendant executed an assignment and license back

agreement with Purple[2] on November 1, 2017. Pl.'s Answer to Summ. J. Mot. 2, Ex. A, ECF No. 14. Defendant assigned Purple "substantially all of its intellectual property . . . and Purple licensed back to [Defendant] such intellectual property for use outside the consumer comfort and Cushioning field of use reserved by Purple." Pl.'s Answer to Summ. J. Mot. 2, Ex. A. This 2017 assignment was one year after Plaintiff suffered his injuries. Pl.'s Answer to Summ. J. Mot. 5. Upon a plain reading of Form 8-K/A, Defendant argues that, Defendant had a license agreement with Purple prior to December 27, 2016. Def.'s Supp. Memo 4, ECF No. 19. Defendant asserts that subject to the license agreement, Defendant did not develop or manufacture the Wondergel Cushion in or around the date of Plaintiff's injury, June 25, 2016. Def.'s Supp. Mem. 4. Plaintiff argues that Purple's licensing of the Wondergel Cushion does not mean that Defendant was not also selling or marketing the product. Pl.'s Reply to Supp. Mem. 2, ECF No. 22.

In further support of its defense, Defendant refers to its manager, Terry Pearce's ("Mr. Pearce") deposition. Dep., ECF No. 19-5. Mr. Pearce stated that Defendant licenses its patents to other companies and collects royalties. Dep. 7. In this same deposition, Mr. Pearce stated that Defendant "ma[de] special runs [of the Wondergel Cushion] for . . . universit[ies]." Dep. 28. Plaintiff argues that based on Mr. Pearce's testimony, Defendant and Purple were selling and marketing the same Wondergel Cushion. Pl.'s Reply to Suppl. Mem. 3, ECF No. 22. Such, a material fact—whether Defendant marketed and sold the Wondergel Cushion—remains at issue. Pl.'s Reply to Suppl. Mem. 3. Considering the evidence on the record, the Court agrees with Plaintiff. Defendant has not presented any evidence which would lead the Court to believe that it did not market, sell and license the Wondergel Cushion. Defendant's role in the marketing and

---

[2] Defendant has argued from the outset of this litigation that Purple Innovation, LLC, formerly known as WonderGel, LLC, developed, manufactured and/or marketed the "WonderGel Roll-n-Go Seat Cushion." Def.'s Summ. J. Mem. 2, ECF No. 10.

selling of the Wondergel Cushion is a genuine issue for trial. Summary judgment on Plaintiff's strict liability claim is denied.

### B. Plaintiff's Breach of Implied Warranties Claims

#### i. Implied Warranty of Merchantability; Implied Warranty of Fitness for a Particular Purpose

Implied warranties of merchantability and fitness for a particular purpose were established to "serve [and] protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." *Altronics of Bethlehem Inc, v. Repco. Inc,* 957. F.2d 1102, 1105 (3d Cir. 1992). To prevail on either claim—merchantability or fitness for a particular purpose—a plaintiff must show that the product is defective. *Id*. A product is defective if "it functioned improperly in the absence of abnormal use and reasonable secondary causes." *Id*. Plaintiff must show: 1) "the product malfunctioned," 2) "plaintiff [] used the product as intended or reasonably expected by the manufacturer," and 3) "absence of other reasonable secondary causes." *Id*.

The implied warranty of merchantability ensures that goods are merchantable—fit for the ordinary purpose for which such goods are used. *Id*; *Bethlehem*, 957 F.2d at 1105. The good need not be the best quality, "but it . . . [must] have [] inherent soundness [that] makes [it] suitable for the purpose for which [it] [is] designed." *Gall by Gall v. Allegheny Cty. Health Dept.*, 555 A.2d 786, 789 (Pa. 1989).

The implied warranty of fitness for a particular purpose exists when the seller at the time of contracting has reason to know 1) "any particular purpose for which the goods are required;" and 2) "that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods." 13 Pa. Cons. Stat. Ann. § 2315. A good created for a particular purpose "envisages a

7

specific use by the buyer which is peculiar to the nature of the business." 13 Pa. Cons. Stat. Ann. § 2315 Cmt. 2.

> ii. **Defendant Marketing, Developing and/or Selling the Wondergel Cushion is a Genuine Issue for Trial**

Plaintiff argues that the Wondergel Cushion "was subject to overheating" and "losing its gel like qualities and flow when exposed to the heat and sun." Compl. ¶¶ 39, 45, ECF No. 1. Plaintiff argues, the Wondergel was not fit for an ordinary purpose nor fit for the particular purpose of providing "extra comfort and support which was of particular appeal to an individual suffering from the conditions from which plaintiff suffered"–lower back spasms, scar tissues and permanent scarring, loss of circulations causing discoloration, increased spasticity in the back and right foot and aggravation of Plaintiff's neuro myeltitis opitca. Compl. ¶¶ 26,43, ECF No. 1. Defendant argues that Plaintiff's warranty claims should be dismissed because there is no evidence that the Wondergel Cushion was purchased from Defendant, and from the outset of this litigation, Defendant has advised Plaintiff that it did not manufacture, develop or market the Wondergel Cushion. Def.'s Summ. J. Mem. 6, ECF No. 10.

A material issue of fact remains—whether Defendant manufactured, developed or sold the Wondergel Cushion. The implied warranties are premised upon the Parties' relationship—Defendant, the manufacturer or seller and Plaintiff, the purchaser. 13 Pa. Cons. Stat. Ann. § 2314(a) ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.")  There remains an issue whether Defendant owed Plaintiff the implied warranties of merchantability and fitness for a particular purpose since the record is in dispute as to whether Defendant manufactured, developed or sold the Wondergel Cushion. Accordingly, Summary judgment on Plaintiff's claims for breach of the

implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose are denied.

### C. Plaintiff's Negligence Claim

To prevail on a negligence claim, a plaintiff must show that "[1)] the defendant had a duty to conform to a certain standard of conduct, [2)] the defendant breached that duty, [3)] . . . such breach caused the injury in question, and [4)] [that such breach resulted in] actual loss or damage." *Cricket*, 841 A.2d at 1008 (internal quotation marks omitted). The question of whether a duty is owed is a question of law. *Berrier v. Simplicity Mfg. Inc.*, 563 F.3d 38, 62 (3d Cir. 2009). As such, a court must consider "1) the relationship between the parties; 2) the social utility of the defendant's conduct; 3) the nature of the risk imposed, and foreseeability of the harm incurred; 4) the consequences of imposing a duty upon the defendant; and 5) the overall public interest in the proposed solution." *Id*. at 61 (internal brackets omitted) (internal citation omitted).

### i. Defendant's Duty to Conform to a Certain Conduct is a Genuine Issue for Trial

Plaintiff argues that Defendant was negligent in failing to 1) "use due care in designing and manufacturing the Wondergel Cushion;" 2) "provide adequate warnings, training or instructions with the Wondergel Cushion;" 3) "test the Wondergel Cushion;" and 4) "provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from using the Wondergel Cushion in the sun." Compl. ¶¶ 49a–c, Doc 1. From the outset of this action, Defendant argued that Plaintiff's claims must fail as Defendant did not manufacture and market the Wondergel. Answer ¶ 5, ECF No. 5. Defendant holds a patent for the Wondergel and

9

licensed it to Purple Innovation LLC, formally known as Wondergell, LLC. Answer ¶¶ 5,7, ECF No. 5.

Relying on the analysis in Section A.iii, it is unclear as to whether Defendant not only holds the patent for the Wondergel Cushion, <u>but also</u> plays a role in the marketing and manufacturing of the Cushion. This is a material fact as to all Plaintiff's claims as well as the negligence claim.

### D. Defendant's Spoliation Argument

#### i. Plaintiff Discarding the Wondergel Cushion Did Not Amount to Spoliation of the Evidence

Spoliation occurs when evidence has been altered or destroyed. *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012). Specifically,

> [T]he evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was **reasonably foreseeable** to the party.

*Id.* (emphasis added).

Defendant's spoliation argument is centered around the foreseeability of this litigation. Defendant argues that it was reasonably foreseeable that Plaintiff could bring a cause of action against Defendant because Plaintiff sought medical attention the day after he was allegedly harmed. Def.'s Summ. J. Mem. 8, ECF No. 10. Defendant has not had an opportunity to inspect the original product, its warnings and packaging; and Defendant believes it is substantially prejudiced in this regard. Def.'s Summ. J. Mem. 8. Defendant believes dismissal of this matter, with prejudice, is the appropriate sanction for Plaintiff's "spoliation of the evidence." Def.'s Summ. J. Mem. 8.

Plaintiff is no longer in possession of the Wondergel Cushion. Summ. J. Mem. 8; Pl.'s Answer. to Summ J. Mot. 6, ECF No. 14; Summ. J. Mem. 9. Plaintiff argues that the fact that Plaintiff sought medical attention does not suggest that he was contemplating litigation or that he had any time to preserve the Cushion. Pl.s' Answer to Summ. J. Mot. 6, ECF No. 14. After the injury, Plaintiff's sole focus was treating the injury. Pl.s' Answer to Summ. J. Mot. 6. Plaintiff stated that he may have discarded the Wondergel Cushion "in the rush of the moment." Pl.'s Answer to Summ. J. Mot. 6. Thus, Plaintiff argues, that Plaintiff did not have a duty to preserve the Cushion as litigation was not contemplated immediately after sustaining his injuries. Pl.s' Answer to Summ. J. Mot. 6. Furthermore, Plaintiff argues, this matter is about defective design in the product and inadequate warnings, not the particular Cushion at issue. Pl.s' Answer to Summ. J. Mot. 6–7. Defendant's inability to inspect the specific Cushion does not prevent it from defending its case. Pl.s' Answer to Summ. J. Mot. 6–7.

The Court agrees with Plaintiff. "For [] spoliation to apply it must appear that there has been actual suppression or withholding of the evidence." *Bull*, 665 F.3d at 79 (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). The court must find that the party acted in bad faith; "bad faith is pivotal to a spoliation determination." *Bull*, 665 F.3d at 79. The Court finds that Plaintiff did not act in bad faith when he allegedly destroyed the Wondergel Cushion. "Dismissals with prejudice are drastic sanctions," and without bad faith, dismissal of this action is too drastic a sanction. *Id.* at 80 (internal quotation marks omitted). Accordingly, the Court rejects Defendant's spoliation argument.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED. An appropriate Order follows.